Mr. Shapiro, you have two minutes for rebuttal. So that gives you eight minutes out of the gate. The floor is yours. Okay, thank you. Good morning, Your Honor. As alleged in our detailed 203-paragraph complaint, the State of New York took my client's property without compensation. It did so by mandating that as April 1, 2025, no entity other than a single state-appointed fiscal intermediary shall provide directly or through contract fiscal intermediary services, rendering my client's businesses illegal and eviscerating their contracts as of that date. So your view is that once they decided to go with an intermediary, a financial intermediary system that allowed there to be 600 registered people, they can never change and go to one? Respectfully, that's not our position, Your Honor. Well, I mean, that seems to be the logical impact of your position. You have to run through the constitutional analysis. So on the contract clause, for example, there would certainly, in the situation where they went down to 75, there would be an evisceration of the contracts that were taken. But wait a second. The contracts were each annual contracts, right? They were. And starting in 2017, they were renewable for a year thereafter. They were terminable without cause on 60 days written notice and for other reasons. And so I'm having difficulty identifying a contract clause that was eviscerated by the action of the state in making it the policy decision it made to go with a single statewide intermediary. Sure, because these contracts. These were one-year contracts, right? They were automatically renewing contracts that had one-year terms. When you say automatically, that wasn't in any contract. Every contract had an automatic renewal provision, and every one of those contracts had been entered into in 2017 and renewed every year. Then why wouldn't it be a one-year contract if it was automatically renewed? The party that either party had the opportunity to say, I don't want to renew it. But as is often the case in two-party contracts, if no party takes an action, it's automatically renewed. But it was terminable, right, without cause on 60 days notice. By the counterparty, not by the state. It's another private party, and my client's reasonable expectations as pleaded as their experience over the last eight or nine years since they entered into those contracts. The reasonable expectation is clear. I mean, obviously, it was a reasonable expectation. But the question is, was there an obligation on the part of the state to recognize that? And here, it seems to me, once they are separated from CDPAP, whatever how you pronounce that. CDPAP. Yeah. Then at that point, they have no basis for being in the contract. And the state can do that. The state did that, in fact. There were prior times when they reduced the numbers of the FIs, and then they were increased later on. Well, as the district court correctly found, those prior instances were of a totally different kind than this, where they totally eliminated their contracts. In those instances, they were either increased the number of FIs or they set certain conditions on FIs. And the district rightly found that we pleaded that our clients had a reasonable expectation that they did not have noticed that the state would come in and do this completely unprecedented thing. I mean, I've never heard of anything like this. Wait. I mean, the contract itself or the contracts, you know, accounted for or contemplated changes in state law or regulation, right? No. Your Honor, no. The state argues that, but that's not correct. The contracts say that my clients have to comply with state law during the term of the contract or the term of the agreement, which is a standard kind of clause in many contracts. It just says they have to comply with state law. The state is over-reading that to say, therefore, if the state that gives the state carte blanche to eviscerate the contracts. So what exactly is the clause that was impaired by the state action? The clause? I mean, the entire contract is impaired. No, no. But the clauses are the payment clauses, the ones that matter to my client, the clauses that say that if they perform services, they're going to get paid. Are you talking about the payment clauses of future expected contracts or are you talking about the payment? Presumably the contract that they were in continued until it's – when your period expired. It continued until April 1st, 2025, and then by operation of the law, it was made illegal to perform under that contract. That is our contract argument. But you received – the law was passed on April 2024 to become effective on April 1, 2025. The contracts for your clients started on January 1, October 1, January 10, June 1. There was ample time for them to expire in the ordinary course. But when you have an automatically renewing contract, and the case law is clear about this, even an at-will contract, the Fifth Circuit held this in the case that cited in the DoorDash case, DoorDash obviously the district court, that when you have an at-will or a renewal contract, it is the – that's just a continuation of the existing contract, unless and until the counterparty, not the state. What is the contractual basis for a compulsory renewal such that renewal – when renewal was prevented, there was a breach? What is the term of the contract that requires removal? Did you say it's automatic? That may have been the custom and the practice for all these years, but I'm looking for specific contractual terms that were invariant. I may have to get that to you on rebuttal, but there is certainly – There is a specific term in the contract that automatically renews. The term of the contract is an automatically renewing contract. Right, but it's turnable at will by either party. But not by the state. Of course, but the point is that the contract contemplates that either party can walk away with 60 days' notice. The state provision doesn't go into effect for a year, and so you seem to be suggesting that private parties have the ability to hamstring the state from regulations because they've developed contracts that have automatic renewal provisions. But that is – number one, that is exactly what the law of – that's what the contract clause does. Parties always have private contracts that have termination rights and obligations by the other counterparty, and the contract clause of the United States Constitution says that the government cannot come in and override those terms by itself. They could look at every contract and say, well, the private party can terminate it for X and Y reasons, so we can abrogate it. So in your view, this is no different. This automatic renewal clause and the termination without cause on 60 days' notice by either party is the same in a 20-year lease, such as the leases that were issued in Melendez. Correct. From the contract clause perspective. So there's no difference. So, in effect, you're saying that the – there was an entitlement to continuation of the contract for the indefinite future. Does that – was there no – Yes, yes. And that's what we pleaded. There's a reasonable expectation. A hundred years. A hundred years. No regulation could alter any term of the contract. No regulation could alter it if there was a significant and legitimate public purpose that was pursued through reasonable and appropriate means, as this Court said in Melendez. But here – And so there's no difference in your mind between a year-long contract with an automatic renewal and a term – a contract with a term that has a definite term of 20 years? Not only is there no difference in my mind, that's what the Fifth Circuit said in UnitedHealthcare against Davis. That's what it held. And that's the only circuit court that has reached this issue. And this Court would create a circuit split if it were to come out the other way. And just to get to your question, Judge – Judge Walker or Judge Sullivan, it's Section 10 of the contract, each contract in the forum contract, the term of agreement shall begin as of the effective date and should continue for one year, after which this agreement shall renew for an additional one-year terms unless otherwise terminated as provided by this agreement or either party gives 60 days advance written notice of the renewal date. That's how automatic termination prisms always work. Here we have the significant legitimate public purpose. We've pleaded that the only purpose that they say that they advance is saving money. It's only a single legislator's statement. This Court in Melendez said that a single – even many legislators – certainly a single legislator's statement can't be taken for the truth on the pleadings. And we plead that this is really for the benefit of a single company and destroys all of our clients' businesses. That easily satisfies the significant public purpose or lack thereof. So if New York State decided it wanted to go from 40 paper vendors to one, they'd be violating the contracts clause because those 40 paper vendors have contracts. If they had ongoing contracts, then certainly – and certainly if it was the State. Well, ongoing – ongoing, you're not differentiating between a lengthy term and automatic renewal. True. Automatic renewal is indefinite in your view. The same kind of entitlement regardless of the ability to terminate without cause and so on. That's true. And to – that's correct. And to get to your question, Judge Sullivan, that's the scary thing for us. Imagine if the State said, you know what, it's much cheaper to have – instead of all these thousands of doctors in the State of New York, let's say all doctors have to go through one hospital network. Let's say all insurance companies in the State of New York have to go through – have to be one State-appointed – I don't know how many hundreds of billions of dollars company that would have all insurance companies in the State of New York. You could run through them. Let's say that State funding for – they go through all kinds of housing and rent things. Let's say the State said, it's a lot cheaper. We don't have to deal with all these different developers. We're going to say there's one developer in the State of New York who can receive State funds. Everyone else, no matter what contracts they had, no matter what expectations, no matter how many millions of dollars they put into their businesses, are going to be completely eviscerated. And that's not a contracts cause violation. That's not a taking. I find that to be really shocking what they've done here. We don't know of a single case anywhere where – or a single instance where a State has done something like this. What other cases do you have for the proposition that an automatically renewable contract that's terminable at will by either party is at the same value for a contracts cause purposes as a contract with a definite extended term? I know of three cases. There's the Fifth Circuit case that I mentioned, the UnitedHealthcare case, which is cited in the DoorDash case where Judge Wood only a couple years ago held this exact thing. That's a district court opinion. Do you have any other authority? Again, there's only one circuit court that has reached this issue, and that circuit court has come out our way. And what are the other two cases that you would refer us to? The other one is the DoorDash case from the district court, and the third is a DoorDash case earlier than the one here in New York from the Northern District of California. So these are three DoorDash cases? No, just the two district court cases. Oh, it's one UnitedHealthcare and two DoorDash cases. Correct. Okay. Again, there's not much law on this, and I think the reason for that is because the understanding is that you have a relation back. The question is reasonable expectation. And here are my clients. No one would build their businesses – Do you agree, though, that if the state hadn't legislated and all the MCOs had decided that your four clients were providing services that were not up to standard or for whatever reason they didn't like doing business with them, that they could have just terminated by sending a note saying we hereby terminate. Within 60 days of the one-year renewal notice term, yes. But that's because that's a private party. That's the exact point – But they could have done that. When we're talking about reasonable expectations and eviscerating an industry, your clients were still vulnerable to a termination without cause by the MCOs, right? Yes. We're at the pleading stage. The question is their reasonable expectation. Did they, spending millions of dollars over the course of many years building businesses, hiring people, taking out rents – It's not entirely reasonable expectations. We're looking for a clause that was impaired by the state's action, and it's been difficult to identify one because we keep getting to reasonable expectations and what automatic renewal means. Because I don't think there's any dispute. I don't think the state disputes that by operation of law the entire contract is null and void or it cannot be operated on as of April 1, 2025. I think we have the argument. If I could just – Well, you have time on rebuttal. We have two minutes for rebuttal. We'll hear it now from Ms. Greenwald. Ms. Greenwald. Good morning, and may it please the Court. Blair Greenwald on behalf of Commissioner McDonald. I'd like to start with the contracts clause claim and the two independent grounds for dismissal there before turning to the takings and due process claims. So as has been discussed, there is no constitutional impairment here based on the plain language of multiple contractual provisions and the fundamental context and purpose of this contract, which sets up a Medicaid payment system while preserving the state's authority and flexibility over the state Medicaid program. So within this heavily regulated state program, the players are well aware that federal and state authorities have ample discretion about making policy choices about what Medicaid programs to offer, who's eligible to participate, and how government funds are spent. The players know that federal and state laws can change and affect or even prevent entities from participating in the system. Now, turning to the specific contractual provisions that we're looking at here. Yeah, but he's arguing that there's a contract clause impairment here. So let's focus on that. I mean, you know, obviously we can change policies, but if you impair a contract, there's a cause of action. So why wasn't there, just I want to understand from you, what the basic argument is that you're making that there was no impairment. Certainly. So I'd like to highlight four contractual provisions here. I'll address two together. Paragraphs 5 and 6 expressly require the FI to comply fully with federal and state law, regulations, agency guidance, and policies, including changes. So that particular language says that the FI will fully abide by rules, policies, procedures that, in here, the MCO establishes or will establish to meet obligations placed by statute, regulation, DOH guidance, and so forth. In addition, paragraph 6 requires the FI to remain eligible to participate in New York State Medicaid under federal and state law during the term of the contract. Then paragraph 11, which opposing counsel did not speak about and which is very important here, says that either party shall have a right to terminate without cause upon 60 days written notice, and this agreement shall terminate automatically and immediately in the event that either party is excluded, suspended, or barred from participating in any government health care program. In addition, paragraph 10 underscores the temporary nature of such participation by stating that the term of the agreement is only for one year, subject to renewal for one-year terms. The CDPAP amendment doesn't impair any specific contractual obligation between the parties. The law gave appellants one-year notice that they would be barred from participating in the State's Medicaid program, and at that time, the contract accordingly terminates in compliance with State law. So I think your opponent is arguing that the automatic renewal creates a reasonable expectation as well as a kind of extended term that is what was impaired, if I understood his argument correctly, by the government's action in this private contract by regulating on top of it. Could you address his argument? Sure. So I'd first just like to clarify that before reaching a party's reasonable expectations, you look at the specific contract and what obligation, if any, is impaired. But even turning to the... I think he's saying that the Fifth Circuit held in the UnitedHealthcare case that the automatic renewal was, in essence, an indefinite term, created an entitlement to an indefinite term. And yet here, the specific contractual language allows for termination. And you look at the specific language in order to determine whether a contractual provision was impaired. But here, the language of the contract is written in a way to preserve the State's flexibility and ability to make policy choices, which makes perfect sense that it would be designed that way, and therefore accommodates termination in the event that State law excludes or bars them from participating in the State program. Well, I think from the briefs, the suggestion from Mr. Shapiro is that that is basically a cause provision. So I just... Excluded, suspended, or barred seems pretty broad. But he's suggesting that that's a language that comes with meaning that limits it to individual determinations of unsuitability as opposed to switching completely to one single provider. So there is no such limiting language in the contract, and you cannot simply just read in these additional provisions. In fact, that would impair the obligation of the contract. By somehow reading this... It does have a flavor of misconduct, suspended or barred, as well as excluded, as opposed to becoming categorically ineligible, which is what happened here. So isn't it fair to give a somewhat different gloss to the excluded, suspended, or barred provision? No, the plain language there is written broadly, specifically for this reason that, in conjunction with the other terms, acknowledges that state and federal law may change, as it often does in this very heavily regulated industry, and the parties are well aware that that can happen. Here, the state is acting within the core of its police powers to promote the public health within a voluntary state Medicaid program, and private parties whose rights are subject to state regulation can't remove themselves from the power of the state through a private contract, and that is standard in a Hudson County Supreme Court decision. In addition, I'd just like to clarify that it is not the case, that nothing like this has ever happened before. Both Pennsylvania in 2013 and Massachusetts one or two years ago transitioned from a larger FI system to a single FI. In New York previously, as an analog, it transitioned to eliminate pharmacy benefit managers as middlemen between insurance companies and Medicaid beneficiaries, and moved to a state system in order to promote cost effectiveness and transparency. So it is well understood that the state makes these policy choices regarding its state Medicaid program and how best to spend government funds. I'd also just like to note that appellant's reading of the contract and trying to read in these additional limitations into the termination provision is overly narrow in practice and wouldn't work. If an FI is excluded from New York State's Medicaid program, not just CDPAT, but New York State's Medicaid program generally, for any reason, not just misconduct, then the FI cannot lawfully receive Medicaid funds, and the contract itself has no function. So the contract term is written specifically in this way in order to make sure that the contract can operate as it's intended to. Could you address his UnitedHealthcare argument? Are you familiar with the case he cited, the Fifth Circuit case? So generally, but more importantly, there's no contractual language that is the same as what is at issue here. And as the district court explained, the contract here is written in a way so that the termination is triggered by the state law and contemplates that state law. Yes, Your Honor. So I don't see a circuit slate being created here. Just out of curiosity, I think the briefs mentioned this. The state was involved in developing the contractual relationship in the sense of drafting a model contract to be used. Is that right, to take into account the state's interests? So that's correct, Your Honor. The state drafts the model contract, and the two parties have to use the model contract. But they weren't signatories. The state is not a signatory. But that shows why the contract is designed the way it is, so as to preserve the state's flexibility in making discretionary policy choices in this way. If I could very briefly turn to the alternative argument on the contracts clause. Here we're looking at the CDPAP amendment as a reasonable and appropriate exercise of the state's authority to adopt a CDPAP model used by nearly every other state. It was appropriately considered to address the skyrocketing administrative costs and paying hundreds of FIs in its outlier model. And the new model will allow much more cost-effective oversight of a single FI vendor. This is very... And where are those policy determinations most cogently summarized? So there's evidence of it both in the statute itself as well as the legislative history that's included in the joint appendix. The statute itself, for example, 365-F4A subsection B i3, notes that the Department of Health will have to conduct a procurement process and select a bidder that provides the best value in order to serve the needs of consumers and effectively provide the fiscal intermediary services. In addition, the legislative history makes clear that the legislatures were looking to move to the same model used by nearly every other state in order to address the skyrocketing costs and preserve the fiscal integrity of the Medicaid program. Sorry, just very briefly, I'd like to address just the takings claim, which is that there's no dispute that valid contracts can create property rights, but not every contract automatically does so, and courts look to the specific provisions of the contract in order to determine what property rights are conferred, whether it was taken by the state, and then how to value it for purposes of determining just compensation. Here, appellants identify no property right that's conferred by the contract and purportedly taken by the state. There's no contract term giving them a right to indefinite participation in the Medicaid program, no contract term giving them a right to future payments from the state Medicaid program, and alternatively, even if there were such terms, the contract has been immediately and automatically terminated pursuant to the termination clause. And finally, just their theory, cannot support their claim for injunctive relief to continue their contracts indefinitely, which is not a proper remedy under the takings clause. If the Court has no further questions, we would urge the Court to affirm the decision below. Thank you, Ms. Greenbaugh. Mr. Shapiro, two minutes for rebuttal. Thank you very quickly. I just have a handful of points I want to make. On the excluded, suspended, or barred language, that is a term of art in contracting law that applies to misconduct. We cite Federal statutes and regulations to that effect that include defining these terms that way. They cite no contrary authority. And if you think about it just from a, if you're, you know, you're in a grade school perspective, if somebody is suspended, that means that they've done a little bit of something wrong. Well, not excluded. I mean, I think that's the one that gives you the most trouble. Your client was excluded. There's only one now registered, there's only one financial intermediary that's registered. So excluded, and this is defined, for example, in 10 U.S.C.A. 4654 that we cite, is excluded for a specific period of time, commensurate with the seriousness of the failure or offense. Excluded is like a spell. Are you looking at Federal statutes for the state, for the language of the contract? Well, we're looking at, this is a contracting law term of arts. We look at other contracting law to see what it means. And it means that as a plain meaning as well, excluded, again. Why would we not just use the dictionary? Because this is, these are the terms of art in Federal contracting law. And that's what, that's what we do when we interpret contracts. This is a state contract. Sure, but it's a form contract that relates to Medicaid funding and that is intended to protect the use of those funds to some extent. That's why they say that provision is there. And it's there specifically to prevent, to prevent, to make sure that a party who, for example, is found to have engaged in misconduct in another state is now automatically barred from this state. And their argument that if somebody is barred from Medicaid, they then can't participate is actually helpful to us because the state could have, the contract could have, and in their reading of it, they changed the text to read in Medicaid. It actually says in any government health program, there's a separate provision, the warranty that my adversary mentioned, that specifically deals with representation that you're, that you're continuing in Medicaid. But for the suspended and barred and excluded, it's clear that's the only reasonable interpretation. At minimum, there's an ambiguity about that. And this Court has made very clear, a claim predicated on materially ambiguous contract is not dismissal on the pleadings. But you're going outside of the pleadings to say we should be looking at other things, right? Well, those are valid sources of authority, legal authority to look at. But if you think that there's a question, then at least we should be able to put those authorities and our clients' understandings in front of the Court. In terms of what I said, that there's nothing like this happened before, excuse me, there's never been a case like this that was challenged and upheld. There were two other states, and those other states went from three or four fiscal intermediaries to one, not hundreds of fiscal intermediaries. But in any event, there's never been a legal challenge like this that was upheld. Did your clients have an opportunity to participate in the legislative process? They certainly did. That doesn't give the legislature carte blanche to violate the Constitution. No, of course not. But it just seems to me that that's the more logical place for you to be making these arguments. They certainly took, participated, and voiced their concerns to the legislature. And there were many legislators to the public purpose. There was one single legislator that said this is going to save $500 million without substantiation. There were numerous legislators, and this is in the record as well, that questioned that and said, I don't – this could end up costing more because my – But generally, I mean, the Supreme Court has given, you know, States a lot of leeway on this. And so it's really just got to be conceivably reasonable or plausible. You think there's no conceivable or plausible reason to go from 675 to 1? Your Honor, this Court in Melendez citing allied structural steel said that where there's a severe impairment of the contract, you require a careful examination. Judge Carney, when you were in your dissent in Melendez, you characterized that as exacting scrutiny. That's what the majority had imposed. That had to do with long-term contracts that didn't have automatic renewal provisions and worked for one-year terms. Right. You have our view on that. And I also just want to make sure the record's clear because I don't want the Court going back and looking at the case and saying that I misrepresented anything. UnitedHealthcare was an at-will contract. There was questions about at-will and automatic renewal. In our view – first of all, this is an at-will and auto renewal. And in our view, that's – you know, that is the only case law on that. This is an at-will contract as well. And so it should be looked at in the same rubric, the DoorDash cases as well. I think the auto renewal strengthens it because it increases the expectation. If it was simply at-will, anyone can end it any time they want. That would be even worse. In terms of the contract term that's impaired, if you want a specific term, I would point you to paragraph 9 of the contract, which is the payment term, which says that MMCO has to pay within 30 days that an invoice is rendered. In terms of – And that's impaired by the State's legislative judgment to no longer pursue this model? It's impaired by saying as of April 1, 2025, one cannot under any contract – and the word contract is in the statute – perform under a contract for fiscal intermediary services. Yes. So as of April 1, 2025, they are not – neither the MCO nor my clients are permitted to perform under their contract. And that is, to me, an explicit invalidation of the contract going forward. Do you agree, though, when you look at the contract as a whole in determining how it operated? Well, you have to – you do look at the contract terms, certainly. And so you have to look at the suspended and barred and all of that, for sure. There is a contract here, and you have to look at whether it's impaired or not. As far as the two last things, the reasonable and appropriate means factor, this Court set out five factors in Melendez. The district court below found that there was only one factor in the State's favor. We disagree with that. But the district court found that the law was not temporary or limited. This Court, Melendez says, that finding alone precludes dismissal of the plaintiff's contract clause claim as a matter of law at the pleading stage. The district court found that there is no compensation due. And that is another of Melendez's factors in our favor. The allocation of economic burdens unquestionably is – our clients are bearing the burdens, and Melendez, the Court said, that destroying the contract expectations of another person, transferring the burden to the few, meets that – Did your clients, in fact, here get termination notices? They did not get termination notices. So it was just by operation of the statute. By operation of the statute. They can no longer perform. And then on the final prong, so we have three of the four prongs that apply are unquestionably in our favor. That alone under Melendez, to me, clearly raises a question of law that can't be decided as a matter – a question that can't be decided as a matter of law on the pleadings, especially our detailed pleadings. And then on the appropriately drawn question, again, we have at the very least questions going both ways. They have one stray legislator, they have one post hoc line item in a budget that the Court in Melendez said could not be taken for the truth of the matter, and neither could the legislator's statement. We have legislators the other way. We have detailed allegations in our complaint that this vitiates their contract without – and it's unreasonable means of doing so, that there are other more narrow ways they could have done so. The Court in the United States trusts the Supreme Court said the State is not free to impose drastic impairment when an evident and more moderate course of service purposes equally well. We think at the very least there's a question on prong two. So you have three prongs in our favor, question on one, and one isn't relevant. That's easily enough or should be basis to remand. And then finally on the takings claim, because I haven't mentioned that at all, we say we have a total takings claim, and I think we do, and I think it's telling that we put takings first in our brief. Every time we brief this case, we put takings first, we argue takings first, and then they bury it in the back of the brief because they're running from it. We have a complete deprivation of our client's contract. That's enough under Lucas. And certainly Penn Central, the Penn Central analysis of flexible, quote, flexible, ad hoc factual inquiry about the economic impacts, the interference with investment backed expectations, the character of the government action, which here transfers all the value to one party, which the Supreme Court in Hodel said is enough to satisfy that it has the character of a takings. So, again, at the very least, we've pleaded enough to satisfy our burden on the pleadings that this cannot be dismissed as a matter of law. There are factual questions here. It should be sent back to the district court for further proceedings. Thank you, Your Honors. All right. Thank you very much. We'll reserve decision.